IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| Kendrick V. Alston, | ) | |
| | ) | Civil Action No. 8:09-1130-RBH-BHH |
| Plaintiff, | ) | |
| | ) | **ORDER AND** |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Winthrop University Police | ) | |
| Department, Rock Hill City | ) | |
| Police Department, Officer | ) | |
| DeWayne Bunch, Officer | ) | |
| John Ranier, and Officer | ) | |
| Mike Smothers, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Plaintiff, proceeding *pro se*, seeks relief pursuant to Title 42, United States

Code, Section 1983. This matter is before the Court on the Defendants' Motions for

Summary Judgment. (Dkt. # 30 and 31.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial

matters in cases filed under Title 42, United States Code, Section 1983, and submit findings

and recommendations to the District Court.

The Plaintiff brought this action on April 30, 2009, seeking damages for alleged civil

rights violations. On November 25, 2009, the Defendants Dewayne Bunch and the

Winthrop University Police Department filed a motion for summary judgment. (Dkt. # 30.)

Also, on November 25, 2009, the Defendants John Ranier, the Rock Hill City Police

Department, and Mike Smothers filed a separate motion for summary judgment. (Dkt. # 31.) On November 30, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motions. The Plaintiff filed a response in opposition to the Defendants' Summary Judgment Motions on January 4, 2010.

## FACTS PRESENTED

In his Complaint, the Plaintiff alleges that on May 4, 2007, the Defendant Officer Dewayne Bunch of the Winthrop Police Department used excessive force during and after the arrest of the Plaintiff. (Compl. at 3.) As a result, the Plaintiff alleges he suffered "multiple bruising, rib fracture, and injuries to the knee, resulting in a stabilizer and crutches for months." *Id.* The Plaintiff also alleges that the Defendants Officers Ranier and Smothers of the Rock Hill Police Department conspired to violate his civil rights and assisted Officer Bunch in inflicting these injuries. *Id.* The Plaintiff further alleges that Officer Ranier "tampered" with the video in his police cruiser before the assault. *Id.* at 4.

Additionally, the Plaintiff alleges he asked for medical attention and was not provided it "in proper time" and that the Rock Hill and Winthrop Police Departments continue to prosecute and harass the Plaintiff and his family. *Id.* Finally, the Plaintiff alleges that "personal property of the Plaintiff was never returned or made available for him." *Id.* The

Plaintiff is seeking actual damages "for pain and suffering, medical bills, loss of property and mental anguish" and punitive damages. *Id.* at 5.[1]

The Defendant Officer Bunch's version of the incident is as follows. Officer Bunch states that on May 4, 2007, he saw a van being driven by the Plaintiff and that he knew the Plaintiff's driver's license was suspended from a prior incident approximately five weeks earlier. (Defs. Bunch and Winthrop Police Dep't's Mem. Supp. Summ. J. Mot. Attach. Bunch Aff. ¶¶ 2-3.) Officer Bunch states that he arrested the Plaintiff in a Dollar General Parking lot and he placed him in the backseat of his patrol car. *Id.* at ¶ 3. He stated that initially the Plaintiff cooperated, but that when Officer Bunch opened the door to discuss the towing of the Plaintiff's van, the Plaintiff put his legs outside the car and refused to place his legs back inside the car. *Id.* He stated the Plaintiff began to kick and refused to comply with directives to place his legs in the car. *Id.* Officer Bunch avers that he asked the Plaintiff to place his legs in the car at least 68 times. (Defs. Bunch and Winthrop Police Dep't's' Mem. Supp. Summ. J. Mot. Attach. Bunch Aff. ¶ 6.) Officer Bunch states the Plaintiff became loud and yelled to bystanders that he was being beaten and that he had a right to resist. *Id.* ¶ 3. When Officer Bunch noticed a crowd was beginning to gather, he called for backup. *Id.* He states that once backup arrived, the Plaintiff began to cooperate and put his legs back inside the car. *Id.*

---

[1]As discussed further in this report, the undersigned notes that the Plaintiff did not allege very many specific facts about the incident in his Complaint. *See* infra p. 9.

Officer Bunch states that on the way to the jail, the Plaintiff began to kick the windows and stated that he was going to kick the windows out of the patrol car. Officer Bunch states he stopped the car so he could place a "hobble cord" on the Plaintiff's legs to keep the Plaintiff from damaging the patrol car. (Defs. Mem. Supp. Summ. J. Mot. Attach. Bunch Aff. ¶ 4.) Officer Bunch states that while trying to place the "hobble cord," the Plaintiff kicked him several times in the chest and neck and that he struck the Plaintiff approximately four times in the leg with his baton. *Id.* ¶¶ 4& 6. He also avers that the other officers, Ranier and Smothers, also struck the plaintiff in an attempt to stop his kicking. *Id.* ¶ 4.

The remaining Defendants, Officers John Rainier and Mike Smothers, also have set forth their versions of the incident in their affidavits. (Defs. Ranier and Smothers' Mem. Supp. Summ. J. Mot. Attachs. # 2 and 3.) They state that they did not become involved until they were called for backup and they arrived after the initial struggle in the parking lot was over and the Plaintiff was in the back of Officer Bunch's patrol car. (Defs. Ranier and Smothers' Mem. Supp. Summ. J. Mot. Attach. # 2 - Rainier's Aff. ¶ 2 & Attach. # 3 - Smothers' Aff. ¶ 2.)

Officer Ranier avers that the Plaintiff, however, was hitting his head against the window and acting violently in Bunch's patrol car. (Defs. Ranier and Smothers' Mem. Supp. Summ. J. Mot. Attach. #2 - Rainier's Aff. ¶ 2.) Officer Rainier states that he was instructed to follow Officer Bunch to the jail. (Ranier Aff. ¶ 3.) Officer Rainier states that as he followed Officer Bunch, he could see the patrol car shaking. (Ranier Aff. ¶ 3.) He states

he saw Officer Bunch suddenly stop his patrol car and go to the rear passenger door and open it. *Id*. Officer Rainier states he stopped his car to assist Officer Bunch. *Id.* Officer Rainier states he went to the rear driver's side door and opened it and he saw the Plaintiff kick Officer Bunch in the chest area, knocking him back. Officer Ranier states the Plaintiff kicked Officer Bunch six to eight times in the chest, arms, and throat. *Id.* He states he struck the Plaintiff twice with his fist in the right peroneal leg nerve which he states is a common technique taught to law enforcement officers. He states he also saw Officer Bunch strike the Plaintiff three times with his baton. (Ranier Aff. at ¶ 5. ) Officer Ranier states he ordered the Plaintiff to stop resisting, but the Plaintiff ignored the directives. *Id.* He states the Plaintiff continued to resist until Officer Smothers arrived and they were finally able to secure the Plaintiff's legs with the hobble cord. (*Id.* at ¶ 6.)

Officer Smothers avers that he responded to where Officer Bunch had pulled the patrol car over after hearing a call for help. (Defs. Ranier and Smothers' Mem. Supp. Summ. J. Mot. Attach. # 3 - Smother's Aff. ¶ 4.) He states when he arrived at the scene, he saw Officer Ranier lying on top of the Plaintiff in the back seat of the patrol car and Officer Bunch was trying to control the Plaintiff's legs from outside of the passenger rear door. *Id.* Officer Smothers states the Plaintiff was kicking his legs and he went to the rear passenger door to help Officer Bunch with the hobble cord. *Id.* He states that, despite the Plaintiff's continued kicking and struggling, they were eventually able to secure his legs. *Id.*

## APPLICABLE LAW

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of it existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all interferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific,

6

material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

## DISCUSSION

Initially, the undersigned recommends that the Defendants the Winthrop University Police Department and the Rock Hill City Police Department be dismissed as these are not proper defendants in this §1983 action. Although "municipalities and other local government units" are "persons" subject to liability for § 1983, police departments, like buildings and correctional institutions, are not usually considered legal entities subject to such suits. *See, e.g., Martinez v. Winner,* 771 F.2d 424, 444 (10th Cir.1985) (holding the Denver Police Department was not a separate entity subject to suit); *Post v. City of Fort Lauderdale*, 750 F.Supp. 1131 (S.D.Fla.1990) (dismissing city police department as not subject to suit); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D.N.C.1989) (holding that § 1983 claims are directed at "persons" and a jail is clearly not a person amenable to suit); *Shelby v. City of Atlanta,* 578 F.Supp. 1368, 1370 (N.D.Ga.1984) (explaining that because police department is merely the vehicle through which the city government fulfills its policing functions, the city, and not its police department, is proper defendant in the suit).

7

Even assuming these Defendants are municipal entities that can be sued under § 1983, the Plaintiff has not made any allegations of policy or custom. A local governmental entity cannot be held vicariously liable for the unconstitutional acts of its employees and is only liable under § 1983 if it causes a deprivation of constitutional rights through an official policy or custom. *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 (1978) (holding municipal governments may be sued only for their own unconstitutional or illegal policies; municipalities may not be sued for the acts of their employees); *Gold v. St. Matthews Police Dep't,* 2007 WL 2110475, at *3 (D.S.C. July 17, 2007) (dismissing the complaint in part because allegations against the police department failed to allege a policy or a custom that deprived the plaintiff of a federal right). Because there are no allegations regarding a policy or custom which has impacted the Plaintiff's constitutional rights, these Defendants should be dismissed.

Turning to the Complaint and construing it liberally, the Plaintiff has alleged claims of excessive force medical indifference, conspiracy, harassment, and loss of personal property.[2] The Defendants contend, inter alia, that the Plaintiff has failed to state any claims and further that they are entitled to qualified immunity.

_____

[2]The undersigned notes that the Plaintiff refers to several other claims in his response to the Defendants' Summary Judgment Motions, e.g. denial of due process and lack of probable cause to arrest the Plaintiff. (Pl.'s Mem. Opp. Summ. J. Mot. at 3.) However, the Plaintiff has not amended his Complaint and therefore these claims are not properly before the court. The Plaintiff further alleges that because there is not a video recording of the incident that Officer Ranier "tampered" with the video in his police cruiser before the assault so it would not record the incident. Compl. at 4. In his response opposing the Defendants' Summary Judgment Motions, in regard to this claim, the Plaintiff contends that Officer Ranier should be found guilty of violating S.C. Code Ann. § 45-7-207, which prohibits tampering with or fabricating physical evidence. This type of relief is unavailable in a § 1983 action. Furthermore, there is no evidence that Officer Ranier "tampered" with his video.

The undersigned notes that in this Circuit, verified complaints by pro se plaintiffs are considered affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin,* 952 F.2d 820, 823 (4th Cir. 1991). Here, the Plaintiff has filed a verified Complaint. Additionally, in response to the Defendants' motions for summary judgment, the Plaintiff filed a memorandum in opposition in which he elaborated on his claims. (Dkt. # 35.) However, while there are several sworn statements from witnesses attached to the memorandum, the Plaintiff's memorandum is unaccompanied by a sworn affidavit from the Plaintiff.

In the support of their motions for summary judgment, the Defendants Bunch and Winthrop University Police Department rely on an audiotape and videotape of the incidents which are discussed in documents filed as attachments to the affidavits of the Chief of Police Frank Zebedis and Deputy Assistant Solicitor Willy Thompson. (Defs. Bunch and Winthrop's Mem. Supp. Summ. J. Mot. at 4, Ex. 1 and Attach. G, and Ex. 2 Attach. A.)[3] The audio and videotapes themselves, however, have not been filed in this case.

In *Scott v. Harris*, 550 U.S. 372, 380 (2007), the Supreme Court stated: "When opposing parties tell two different stories, one of which is blatantly contradicted by the

---

[3]The incident alleged in this action was investigated by the State Law Enforcement Division ("SLED"). (Defs. Bunch and Winthrop University Police Department Mem. Supp. Summ. J. Mot. Ex. 2 ¶ 2 and Attach. A.) Special Agent Scott Williams of SLED provided a report to the solicitor's office. *Id.* Deputy Assistant Solicitor Willy Thompson investigated and reviewed SLED's report and concluded that the Plaintiff's claims of excessive force were unfounded. *Id.* ¶ 3-5 and Ex. A. Assistant Chief of Winthrop University Police Department Dan Yeargin also investigated and reported his finding to Zebedis that the Defendant Bunch's conduct was lawful. *Id.* Ex. 1 Attach. G.

record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." In *Scott*, the Court had the benefit of a videotape that showed conclusively what had happened. Here, while there is apparently audiotape and videotape depicting what happened during and after the Plaintiff's arrest, the tapes themselves are not in the record. The undersigned acknowledges that the Defendants have submitted affidavits and other documents regarding what is allegedly on the tapes. (Defs. Bunch and Winthrop's Mem. Supp. Summ. J. Mot. Ex. 1 & Attach. G;and Ex. 2 & Attach. A.) However, unlike the actual tapes themselves, which could be indisputable and conclusive evidence of what occurred during and immediately after the Plaintiff's arrest, the affidavits are subject to challenge.[4] Therefore, to the extent that the Defendants' affidavits and attachments discussing the tapes are contradicted by the Plaintiff's version of the incident as set forth in his Complaint and sworn statements, the undersigned has not relied on these affidavits as that would be an inappropriate credibility determination. *See Hubbell v. World Kitchen*, LLC, 2010 WL 678939 at *23 (W.D.Pa. 2010)(holding summary judgment was not appropriate where the parties did not submit the surveillance tape itself for consideration, leaving the court with only the differing accounts of the incident contained in the record.)

To clarify, in preparing this report and recommendation, the undersigned has relied upon the allegations in the Complaint and only the sworn statements and affidavits which

---

[4]The undersigned is not suggesting that a videotape always withstands any possible contradiction, impeachment, or explanation. A videotape recording reflects a particular point of view and has its limitations and thus may or may not conclusively support one side. *See e.g. Buber v. Township of Old Bridge*, 2007 WL 4557658 (D.N.J. 2007)(unpublished).

were filed with the Plaintiff's opposition memorandum and the uncontradicted statements found in the affidavits filed in support of the Defendants' motions for summary judgment.

**Excessive Force Claims**

The Plaintiff alleges that the Defendant Officer Dewayne Bunch of the Winthrop Police Department used excessive force during and after the arrest of the Plaintiff. (Compl. at 3.) As a result, the Plaintiff alleges he suffered "multiple bruising, rib fracture, and injuries to the knee, resulting in a stabilizer and crutches for months." *Id.* The Plaintiff also alleges that the Defendants Officers Ranier and Smothers of the Rock Hill Police Department conspired to violate his civil rights and assisted Officer Bunch in inflicting these injuries. *Id.*[5]

The Fourth Amendment governs claims of excessive force during the course of an arrest, investigatory stop, or other "seizure" of a person. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining whether the force used to carry out a particular arrest is unreasonable" under the Fourth Amendment requires " 'balanc[ing] the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.' " *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotation and citation omitted). The outcome of this balancing test necessarily depends on the facts and circumstances of the particular case. *Id.* at 8-9

---

[5]The undersigned notes that in his Complaint, the Plaintiff merely states that the officers "use[d] more force than reasonably necessary in this matter. . . " (Compl. at 4.) "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir.1995). *See also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding courts need not assume the truth of legal conclusions couched as factual allegations). However, even addressing the merits, the Plaintiff's claims of excessive force fail as discussed herein.

(question is "whether the totality of the circumstances justifie[s] a particular sort of search or seizure"). In striking this balance, due regard must be given to the fact that law enforcement officers must make split-second judgments about the amount of force necessary to effect a particular arrest, in circumstances that are stressful and rapidly changing. *See id.* at 26 (O'Connor, J., dissenting). Factors to consider in this analysis include, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. The reasonableness of the officer's use of force must be determined "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396 (recognizing that the police must often make "split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving"). The court must also consider the extent of the injuries caused to the plaintiff. *See Jones v. Buchanan,* 325 F.3d 520, 530-31 (4th Cir. 2003).

In *Riley v. Dorton,* 115 F.3d 1159, 1164 (4th Cir. 1997), the Fourth Circuit rejected the concept of a "continuing seizure" and found that the Fourth Amendment "does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody." Instead, "excessive force claims of pretrial detainees [and arrestees] are governed by the Due Process Clause of the Fourteenth Amendment." *Id.* at 1166. "To succeed on a claim of excessive force under the Due Process Clause of the Fourteenth Amendment, [a plaintiff] must show that Defendants 'inflicted unnecessary and wanton pain and suffering.'" *Taylor*

*v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998) (*quoting Whitley v. Albers*, 475 U.S. 312

(1986)). " 'In determining whether [this] constitutional line has been crossed, a court must

look to such factors as the need for the application of force, the relationship between the

need and the amount of force used, the extent of the injury inflicted, and whether the force

was applied in a good faith effort to maintain and restore discipline or maliciously and

sadistically for the very purpose of causing harm.'" *Orem v. Rephann,* 523 F.3d 442, 446

(4th Cir. 2008) (*quoting Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)).[6]

      The Fourth Circuit has not established a rule to determine when Fourth Amendment

protections end and Fourteenth Amendment protections begin. However, the Fourth Circuit

has recognized that "[t]he point at which the Fourth Amendment protections end and the

Fourteenth Amendment protections begin is often murky." *Orem,* 523 F.3d at 445. In *Orem,*

the Fourth Circuit found that because Orem's claim arose during her transport to jail (after

she had been arrested but before she had been formally charged), her status as an

arrestee required application of the Fourteenth Amendment to her claim. *Id.* at 446; *see*

*also Robles v. Prince George's County,* 302 F.3d 262, 268 (4th Cir. 2002) (holding that

---

[6]The Defendants Bunch and the Winthrop University Police Department rely on *Norman v. Taylor* , 25 F.3d 1259, 1263 (4th Cir. 1994), for the proposition that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis. " (Def. Bunch and Winthrop University Police Department's Mem. Supp. Summ. J .Mot. at 12-13.) However, the Supreme Court, recently rejected the de minimis threshold set forth in *Norman. Wilkins v. Gaddy*, ___ U.S. ___, 130 S.Ct. 1175, ___ L.Ed.2d ___ (2010). The Court held that the level of force used determines whether an inmate's constitutional rights were violated, not the injury sustained. *Id.*

"[o]nce the single act of detaining an individual has been accomplished, the [Fourth] Amendment ceases to apply.").

Here, the Plaintiff alleges the Defendant Officer Bunch used excessive force in placing the Plaintiff into the patrol car and that afterwards when the Defendants stopped the police car on the way to the jail and beat him. Because the Plaintiff had been effectively seized once he was placed in the backseat of the patrol car, and because the Fourth Circuit has rejected the concept of a "continuing seizure," it appears that the Fourteenth Amendment also applies to some the Plaintiff's claims of excessive force.

Initially, the undersigned address the Defendants contention that the Plaintiff's excessive force claims are barred by *Heck*, 512 U.S. 477 (1994). (Defs. City of Rock Hill and Officers Ranier and Smothers' Mem. Supp. Summ. J. Mot. at 13.) The undersigned agrees that to the extent that an excessive force claim represents a collateral attack on the Plaintiff's criminal conviction, it is barred by *Heck*. *Cummings v. City of Akron,* 418 F.3d 676, 682 (6th Cir. 2005) ("[S]uccess on [Plaintiff's] excessive force claim would necessarily imply the invalidity of his state assault conviction. The struggle between [Plaintiff] and the officers gave rise to both [Plaintiff's] assault conviction and the excessive force claim, and the two are inextricably intertwined."); *Hudson v. Hughes,* 98 F.3d 868, 872-73 (5th Cir.1996); *Woods v. Cashier*, 2006 WL 2385275, *8 (D.S.C. Aug.17, 2006). It is possible for an excessive force claim to proceed without necessarily implying that an underlying criminal conviction arising out of the claimant's arrest was wrongful. *Smith v. City of Hemet,* 394 F.3d 689, 699 (9th Cir.2005) (en banc) (holding that success on merits of appellant's

excessive force claim did not necessarily imply the invalidity of his criminal conviction, and therefore was not barred by *Heck*). "If, however, there is no legal nexus between the officer's alleged force and the Plaintiff's resistance; that is, the alleged excessive force occurred, independently, either before the Plaintiff resisted arrest, or after his resistance had clearly ceased, then a successful § 1983 suit for excessive force would not imply invalidity of the conviction." *Brooks v. City of Winston-Salem*, 85 F.3d 178, 182-183 (4th Cir. 1996). *See Smith v. City of Hemet*, 394 F.3d 689, 697-99 (9th Cir.2005) ("[A] § 1983 action is not barred by *Heck* unless the alleged excessive force occurred at the time the offense [of resisting arrest] was being committed. . . . [If the officers'] alleged acts of excessive force . . . occurred before or after the [plaintiff] committed the acts to which he pled, [they] would not invalidate his conviction [for resisting arrest].") (citation omitted). Therefore, it is necessary to examine the Plaintiff's excessive force claims carefully and determine whether these claims arose before or after the Plaintiff's acts which constituted his resisting arrest conviction.

Clearly, there is a legal nexus between the allegations of excessive force used by the Defendant Bunch in the General Dollar parking lot and the Plaintiff's conduct giving rise to his resisting arrest conviction. Therefore, the Plaintiff's excessive force claim regarding that specific conduct is barred by *Heck*. *See Woods v. Cashier*, 2006 WL 2385275, at *7-9 (D.S.C. Aug.17, 2006).

Whether the Plaintiff's conviction for resisting arrest extended to his actions during the ride to the jail is not as clear from this record. Thus, the undersigned will review these

claims on the merits and analyze under the Fourteenth Amendment whether a question of fact exists as to the Defendants' use of excessive force when the patrol car was stopped on the way to the jail.

In his affidavit, Officer Bunch states that on the way to the jail, the Plaintiff began to kick the windows of the police car and stated that he was going to kick the windows out. (Defs. Mem. Supp. Summ. J. Mot. Attach. Bunch Aff. ¶ 4.) Officer Bunch states he stopped the car so he could put a "hobble cord" on the Plaintiff's legs to keep the Plaintiff from damaging the patrol car. *Id.* Officer Bunch states that while trying to place the "hobble cord," the Plaintiff kicked him several times in the chest and neck and that he struck the Plaintiff approximately four times in the leg with his baton. *Id.* ¶¶ 4 & 6. He also avers that the other officers, Ranier and Smothers, also struck the plaintiff in an attempt to stop his kicking. *Id.* ¶ 4.

In his affidavit, Officer Rainier states he saw the Plaintiff kick Officer Bunch in the chest, arms, and throat. (Defs. Ranier and Smothers' Mem. Supp. Summ. J. Mot. Attach. #2 - Rainier's Aff. ¶ 2.) He states he struck the Plaintiff twice with his fist in the right peroneal leg nerve which he states is a common technique taught to law enforcement officers. He states he also saw Officer Bunch strike the Plaintiff three times with his baton. *Id.* at ¶ 5. Officer Ranier states he ordered the Plaintiff to stop resisting, but the Plaintiff ignored the directives. *Id.* He states the Plaintiff continued to resist until Officer Smothers arrived and they were finally able to secure the Plaintiff's legs with the hobble cord. *Id.* at ¶ 6.

In his affidavit, Officer Smothers states Officer Bunch was trying to control the Plaintiff's legs from outside of the passenger rear door. (Defs. Ranier and Smothers' Mem. Supp. Summ. J. Mot. Attach. # 3 - Smother's Aff. ¶ 4.) Officer Smothers states the Plaintiff was kicking his legs and he went to the rear passenger door to help Officer Bunch with the hobble cord. *Id.* He states that, despite the Plaintiff's continued kicking and struggling, they were eventually able to secure his legs. *Id.*

In his Complaint, the Plaintiff does not dispute that he failed to follow directives or resisted arrest; he merely states that the officers "use[d] more force than reasonably necessary in this matter. . . " (Compl. at 4.) "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel,* 43 F.3d 918, 921 (4th Cir.1995). *See also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (holding courts need not assume the truth of legal conclusions couched as factual allegations). Further, the sworn statements attached to the Plaintiff's memorandum opposing summary judgment do not establish a question of fact in regard to the reasonableness of force used by the Defendants on the ride to the jail.

The Plaintiff attached sworn statements from five witnesses: Valerie Slusser, Alicia Rivera, Shanita Williams, and Carolyn Perry. (Pl.'s Mem. Opp. Summ. J. Mot. Attach. # 4.) Reviewing these statements, however, only two witnessed the stop on route to the jail: Alicia Rivera and Carolyn Perry. Rivera stated that she saw the officer stop the car, but she specifically stated that she did not see him strike the Plaintiff. *Id*. at 3. Perry states she saw the patrol car stop and she noticed that the Plaintiff's legs were sticking outside the car and

it appeared to her that officers were trying to get the Plaintiff's legs back into the patrol car. *Id*. at 7. Neither Rivera or Perry's statement create a issue of fact regarding whether the Defendants used excessive force on the Plaintiff when the patrol car was stopped on the way to the jail. Accordingly, the undersigned recommends that the Defendants be granted summary judgment on the Plaintiff's claims of excessive force.

**Medical Indifference Claims**

In his Complaint, the Plaintiff alleges he asked for medical attention and was not provided it "in proper time." (Compl. at 4.) The record shows that the Plaintiff was stopped at approximately 7:30 p.m. on May 4, 2007, in the Dollar General Store parking lot and arrested. The Plaintiff's medical records show that he was examined by EMS workers on May 5th and transported to the hospital for further evaluation. (Defs. Bunch and Winthrop Police Dept. Mem. Supp. Summ. J. Mot. Attach. # 6.) At the hospital, the Plaintiff was diagnosed with a rib fracture and contusions on his knee. *Id.*[7] The Defendants also contend that the Plaintiff was seen by EMS workers on May 4th, but the Plaintiff denies this and there is no medical record of this treatment. However, even assuming the Plaintiff was not seen until May 5th, he has failed to state a claim of deliberate indifference against the Defendants.

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). This obligation

_____

[7]The undersigned notes that the medical records also show that the Plaintiff was treated at Piedmont Medical Center three days earlier on May 2, 2007, after being hit with a brick in his face and ribs.

arises from an inmate's complete dependence upon prison medical staff to provide essential medical service. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104.

Deliberate indifference is a very high standard. In *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), the Fourth Circuit Court of Appeals noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. *Estelle,* 429 U.S. 104; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy,* 797 F.2d 179 (4th Cir.1986). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.'" *Coppage v. Mann,* 906 F.Supp. 1025, 1037 (E.D.Va. 1995) (*quoting Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987)).

Furthermore, the Fourth Circuit has held that to bring a denial of medical treatment claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d 848. Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id*. Under these principles, the Plaintiff has not alleged facts stating any claim actionable under § 1983 regarding his course of medical treatment against any of the named Defendants, who are non-medical personnel. Furthermore, there is no evidence in the record that the Defendants were aware that the Plaintiff needed medical attention and denied him such. Finally, the Plaintiff has not alleged any delay in treatment caused him to suffer a life-long handicap or permanent loss. *Coppage v. Mann,* 906 F.Supp. at 1037.

Additionally, to the extent the Plaintiff relies on the doctrine of supervisory liability against any of the Defendants, the Plaintiff has failed to make any showing of supervisory liability. It is well-established that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983. *See, e.g., Monell v. Dept. of Social Svs.,* 436 U.S. 658, 691-92 (1978). A medical indifference claim is not appropriate against a superintendent/supervisor absent an allegation that he was personally connected to the treatment received. *Vinnedge v. Gibbs,* 550 F.2d 926 (4th Cir.1977). To hold a supervisor liable for a constitutional injury inflicted by a subordinate under § 1983, the plaintiff must allege facts establishing the following elements: (1) the supervisor had actual or

constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir .1994). Thus, in the context of a medical indifference claim, supervisory liability may only be shown where the official failed to promptly provide a prisoner with necessary medical care, deliberately interfered with a prison doctor's performance, or was indifferent to a prison doctor's constitutional violation. *Miltier*, 896 F.2d 848 at 854. Accordingly, the Plaintiff's claims if medical indifference should be dismissed.

**Conspiracy Claims**

In his Complaint, the Plaintiff alleges that the Defendants Officers Ranier and Smothers of the Rock Hill Police Department conspired to violate his civil rights and assisted Officer Bunch in inflicting these injuries.   (Compl.  at 3.)

To establish a civil conspiracy under § 1983, a plaintiff must present evidence that the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy, which resulted in deprivation of a constitutional right. *Hinkle v. City of Clarksburg,* 81 F.3d 416, 421 (4th Cir.1996). Thus, an essential element for a claim of conspiracy to deprive a plaintiff of a constitutional right is an agreement to do so among the alleged co-conspirators. *Ballinger v. N.C. Agric. Extension Serv.*, 815 F.2d 1001, 1006-07 (4th Cir. 1987).  Without a meeting of the minds, the independent acts of two or more

wrongdoers do not amount to a conspiracy. *Murdaugh Volkswagon v. First Nat'l Bank*, 639 F.2d 1073, 1075-76 (4th Cir. 1981). The plaintiff must allege facts showing that the defendants shared a "unity of purpose or a common design" to injure the plaintiff. *Am. Tobacco Co. v. United States,* 328 U.S. 781, 809-10 (1946).

When a complaint makes only conclusory allegations of a conspiracy and fails to demonstrate any agreement or meeting of the minds among the defendants, the court may properly dismiss the complaint. *See Woodrum v. Woodward County, Okla.*, 866 F.2d 1121, 1126-27 (9th Cir. 1989); *Cole v. Gray,* 638 F.2d 804, 811-12 (5th Cir. 1981). Reviewing the Plaintiff's Complaint, the undersigned concludes that the Plaintiff fails to allege any facts indicating that the Defendants acted jointly to injure him, and his conclusory allegations are insufficient to state a claim upon which relief may be granted. Accordingly, the conspiracy claim should be dismissed.

**Harassment**

In his Complaint, the Plaintiff alleges the Rock Hill and Winthrop Police continue to prosecute and harass him and his family and have made living in Rock Hill extremely difficult. (Compl. at 4.) In his Complaint, he does not provide any further details regarding these allegations.[8] Clearly, these allegations are too conclusory to state a § 1983 claim.

---

[8]In his response opposing the Defendants' summary judgment motions, the Plaintiff states that he will find the names of the officers and the dates by the time of trial. (Pl.'s Mem. Opp. Summ. J. Mots. at 5.) The Plaintiff has had ample opportunity to discover the specific details regarding this claim. Summary judgment should not be denied on the hopes that he will be able to provide some details of this claim at trial.

*Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985)(holding conclusory allegations, without more, are insufficient to preclude the granting of the summary judgment motion). Accordingly, the Defendants should be granted summary judgment on this claim.

**Loss of Personal Property**

In his Complaint, without making any specific allegations, the Plaintiff alleges he has experienced a loss of personal property. (Compl. at 4.)[9]

First, the undersigned finds that the Plaintiff's allegations are too conclusory to state a claim. However, in any event, the claim would also fail on the merits. The Fourth Circuit has held that a federal district court should deny § 1983 relief if state law provides a Plaintiff with a viable remedy for the loss of personal property. *Yates v. Jamison,* 782 F.2d 1182, 1183-84 (4th Cir. 1986). It has been held that claims related to personal property are cognizable under South Carolina state law. *See McIntyre v. Portee,* 784 F.2d 566, 567 (4th Cir.1986). There are also specific South Carolina laws governing the return of property seized and/or forfeited in connection with criminal charges. *See, e.g.,* S.C.Code Ann. §§ 44-53-530; 44-53-586. Therefore, even assuming that the Plaintiff has experienced an

---

[9]In his response opposing the Defendants' summary judgment motions, he expands on this claim and states that when he was arrested, his 1997 Dodge Caravan was towed and apparently impounded and not returned him to him after he was found not guilty of driving under suspension. (Pl.'s Mem. Opp. Summ. J. Mot. at 6.) He states that once he was released from jail, he contacted the Chief of the Winthrop Police Department who told the plaintiff that he did not know anything about the van. *Id.* He alleges that this was a joint effort between the Winthrop and Rock Hill Police Department and it caused him to lose his van and its contents. *Id.*

unauthorized intentional property deprivation, he has failed to show a constitutional violation because he has a meaningful post-deprivation for his alleged loss under South Carolina law.

**Motion to Strike**

The Plaintiff has filed a motion to strike the Defendants' affidavits. (Dkt. # 33 - Pl.'s Mot. to Strike.) He alleges the Defendants have attempted to mislead the Court into thinking that the Plaintiff was convicted of the following charges: assault on an officer, damage to property, and driving under suspension ("DUS"). *Id.* In their memorandum supporting their summary judgment motion, the Defendants Bunch and Winthrop Police Department specifically state the Plaintiff was convicted of resisting arrest under S.C. Code § 16-9-320(A). (Defs.' Mem. Supp. Summ. J. Mot. at 4 & Thompson Aff. ¶ 6.) The remaining Defendants City of Rock Hill, and Officers Ranier and Smothers state in their memorandum that the Plaintiff was *charged* with DUS, resisting arrest, and damage to property. (Defs.' Mem. Supp. Summ. J. Mot. at 1.) The Defendants have not mislead the Court in any way. The undersigned is well aware that the Plaintiff was found guilty only of the lesser included offense of resisting arrest under § 16-9-320(A), rather then the offense of resisting arrest involving an assault on an officer under § 16-9-320(B); and further that the Plaintiff was not convicted of DUS or damage to property. Accordingly, the Plaintiff's motion to strike is denied.

## CONCLUSION

Wherefore, based on the foregoing, it is RECOMMENDED that the Defendants' Motions for Summary Judgment (Dkt. # 30 and 31) be GRANTED and the Plaintiff's Complaint be DISMISSED with prejudice.

**IT IS SO RECOMMENDED.**


**ORDER ON PLAINTIFF'S MOTION To STRIKE**

As discussed above, the Plaintiff's motion to Strike (Dkt. # 33) is DENIED.

**IT IS SO ORDERED.**


s/Bruce Howe Hendricks
United States Magistrate Judge


May 10, 2010
Greenville, South Carolina


**The Plaintiff's attention is directed to the important notice on the next page.**